The first appeal we'll hear argument on is docket number 23-2201, Pelt v. Collins. Mr. Niles? Thank you, Your Honor, and may it please the Court. To assign the correct disability rating for hypertension, VA must address the veteran's historical premedication blood pressure readings. Here, the Board of Veterans' Appeals did not do this. It was the Veterans' Court that addressed that in the first instance, despite this Court's repeated admonishments against the Veterans' Court finding facts in the first instance. Mr. Pelt respectfully requests that this Court vacate the Veterans' Court's decision in a reband because, pursuant to this Court's precedents in Tadlock and Slaughter and Stinson and Deloach, such first-instance fact-finding is to be made by the Board. And what is—go ahead. Didn't the Veterans' Court consider the evidence that was on the record in making its decision? And maybe they alluded to other evidence, but wasn't that simply sort of a confirmatory observation? Yes, but, Your Honor, yes, the Veterans' Court addressed at Appendix Page 4 the 10 premedication blood pressure readings that Mr. Pelt had and addressed it then at the initial brief before the Veterans' Court, Page 2. And they're in this appendix at Page 27, 30, 33, 36, 39, 44, 48, and 50. Across the seven visits, again, for medical care before the medication for the hypertension, with only three of those visits having two or more readings at once, as the Diagnostic Code 7101 First Note alludes to. And yes, the Veterans' Court made a finding that there is no reasonable possibility under one possible definition of the word predominantly, as it is used in VA's regulation for rating hypertension. If we were to conclude that is the only reasonable interpretation, then do you lose your case? Yes, Your Honor. Okay. So I also want to make sure I understand your understanding of your allegation that the Veterans' Court engaged in impermissible fact-finding. My understanding is that there's no dispute over the identification of what readings, blood pressure readings, should be considered. Is that right? My understanding is your side presented to the Veterans' Court 10 specific readings for the Veterans' Court to consider. Again, yes, but, Your Honor, yes, Mr. Pelt presented the 10 readings, but segmented them into the seven different visits, three of which had the two or more readings at the same time. You're making a visits-based argument now about how to understand the Diagnostic Code. Did you make that argument below, in front of the Veterans' Court? When Mr. Pelt moved for reconsideration before the Veterans' Court, arguing the Veterans' Court misunderstood or overlooked a point-of-factor law, yes, Appendix pages 104 to 105. I thought the nature of the appeal was really more about this mode-based analysis, the mathematical mode, which of all the different readings, of different values of the readings is the most common value. That is the possible interpretation of predominantly that the Veterans' Court latched onto and rejected and then found. Right, when you say they latched onto it, it was because that was what Mr. Pelt argued to the Veterans' Court, right? Mr. Pelt certainly highlighted that in his brief, but is of the position and consistently of the position, Your Honor, that ultimately this went to prejudice and, as, again, Mr. Pelt included in the motion for reconsideration, the Veterans' Court had overlooked or misunderstood that there was more at play here than just 10 visits mathematical mode. Instead, what happened here was the board entirely failed to address these pre-medication readings. And when the board left that blank space... The board noted that the examiner looked at those readings and concluded that there wasn't a predominant number of those readings that showed 100 or more diastolic pressure, right? Yes, Your Honor, and for that examination to be adequate for adjudicative purposes, it had to comport with, except the medical practices and the facts of record. And so then part of the premise it has to adhere to then is what is the definition of predominantly? When VA asked the examiner, you know, is there a history here predominantly of diastolic readings, 100 or more, if the examiner is answering that pursuant to the wrong legal definition, well, that's a bad exam. And so that then is a material issue for the board to address. But you don't dispute that of the 10 readings, 10 separate readings of diastolic pressure, only four of them had a reading of 100 or more, is that right? That's correct, Your Honor. So a minority of the readings has 100 or more. If the definition of predominantly requires looking reading by reading as opposed to across the visits of at least one reading of 100 or more, or as Diagnostic Code 7101's first note focuses in on, just those visits with two or more readings, or as VA's own internal policy manual considers the issue for requiring that the readings be for diagnostic evaluation purposes. On what basis should the readings be considered on a per-visit basis? Diagnostic Code 7101's first note requires that the readings come from two or more readings at least three days. And so consistent with that text, then, it would be a reasonable interpretation that it goes visit, where you're looking for visits with two or more. And here you have seven visits, four of which have a reading of 100 or greater, and then four of seven as opposed to four of 10. The Veterans Court did not affirmatively interpret the term predominantly in this case, but instead rejected a possible interpretation of it. And the distinction matters because what was left, then, were issues that remained debatable. And so when the Veterans Court affirmed, even when those issues remained debatable, it overstepped Hadlock, Stinson 38 USC, Section 7261C, which those cases interpret, and was acting beyond the scope of its statutory authority. And so with the Board having left these issues unaddressed, the definition of predominantly and the actual pre-medication readings, and the Veterans Court not having found against a reasonable possibility of success through each of them, what we're left with is, again, the Veterans Court overstepping and affirming the Board error in not addressing those issues, filling that gap when those issues were not undebatable. And so, again, Mr. Pelt respectfully requests that this Court vacate the Veterans Court's decision and remand, preferably with instructions for the Veterans Court to remand, for the Board to resolve these fact-based issues in the first instance. Has Mr. Pelt been getting any other subsequent blood pressure readings? He has, Your Honor, but Mr. Pelt is on continuous blood pressure medication, and the test under Diagnostic Code 7101, or the pertinent diagnostic criteria on here, it warrants a 10 percent rating so long as the Veteran is on continuous blood pressure medication and before that, before the medication began, had a history of diastolic pressure of 100 or more. I see. Okay. I'd be happy to address any additional questions the panel has at this time. That's fine. Okay. I respectfully request the... Let's hear from the government. Thank you, Your Honor. And we'll save your extra time for rebuttal. Good morning, Your Honors, and may it please the Court. In this case, both the VA examiner and the Board looked at the objective medical evidence to conclude that Mr. Pelt's history of diastolic blood pressure was not predominantly 100 millimeters of mercury or more. The Veterans Court did not err in favor of a 100 millimeters of mercury. Before the Veterans Court, Mr. Pelt directed this Court's attention to 10 premedicated blood pressure readings. Now, the Board and the VA examiner did not explicitly list out those 10 blood pressure readings. But these blood pressure readings, undisputably, were before the VA examiner, they were before the Board, and the VA examiner specifically stated that he was evaluating the entire medical record. Even if the VA examiner and the Board erred by not listing these 10 blood pressure readings, the Veterans Court properly determined that this error was harmless. These readings undoubtedly show that Mr. Pelt's premedicated diastolic blood pressure is not 100 or more. Indeed, 6 out of 10 of these readings are below 100. And this is precisely the type of clear-cut issue that the doctrine of harmless error was intended to address. Mr. Niles argues that the blood pressure readings should be considered on a per-visit basis. What's your reaction to that? We would respectfully disagree with that interpretation. Diagnostic Code 7101 speaks in terms of blood pressure. And blood pressure is measured by readings, not by visits. What is the implication of the statement in the rule that the readings must be taken at least three different visits? Visits are implicated somehow. Sure. And the purpose of that note is to reinforce the importance of getting a longitudinal analysis of the Veteran's alleged hypertension, not just a snapshot at one visit. But even more, this interpretation of visits cuts against common sense. Everybody knows if you're struggling or potentially struggling with hypertension, a medical provider will never just do one reading and call it a day. There's a well-documented phenomenon of the white coat syndrome. And so they will always do multiple readings. Well, they should typically do multiple readings in a single visit to check against the risk of white coat syndrome. But regardless, the clear text of 7101 speaks in terms of blood pressure and not visits. You measure blood pressure with blood pressure readings. But even so, even if this court, rather, this court doesn't have an occasion to consider the interpretation of 7101 or the meaning of predominant, even though the government's position is the only reasonable interpretation of that word, because the Veterans Court simply did not err when it looked at the blood pressure readings that Mr. Pelt himself put before the Veterans Court. It's important to remember the context of the Veterans Court decision. Mr. Pelt brought principally a reasons and basis challenge to the board's decision. Now, the Veterans Court could have simply looked at Appendix page 99, which is the board's decision, and say, Mr. Pelt, the board considered the medical records and considered the factual findings, considered the examination results, and considered the VA examiner's evaluation of the medical records. That's sufficient, and we dismiss your appeal. Instead, what the Veterans Court did is entertain this predominance argument, spelled it out perhaps to the benefit of the veteran to, you know, fully educate the issues and describe why they disagree with him. And now before this court, Mr. Pelt is challenging the Veterans Court's decision to fully explain their analysis to the veteran. And so we would ask that, well, we would suggest that Tadlock should not be read in a way that discourages the Veterans Court to look at the record and give these fulsome explanations when doing so is warranted. Nor should Tadlock be read in a way that encourages the Veterans Court to remand cases when there's no reason to remand. And in this case, there simply is no reason to remand this fact to the board, because as the Veterans Court decided or clarified, there is, quote, there is no reasonable possibility that analysis of these 10 blood pressure readings would alter the outcome. And that is the paradigm case of harmless error. There's simply no world in which spelling out and listing these 10 blood pressure readings would alter the outcome of this case. What if the facts were a little different? What if Mr. Pelt had appealed to the Veterans Court and said, the board was wrong in saying I don't have a predominant number of blood pressure readings at 100 or more. Look at my, you know, they didn't really review my records properly. If you, the Veterans Court, look at my records, you'll see it. And then the Veterans Court starts looking through all of his medical history files and then plucks out these 10 readings and says, OK, I'm going to now do the analysis of these 10 readings I found in your records. Would that be going too far? Because now that would be engaging in some kind of fact finding. And so just so I'm clear, Your Honor, does that imply that there's more than 10 readings and they selectively chose these 10? We don't know. So in that case, Your Honor, that may be the context that Tadlock discussed where this is an issue open to debate. And because it's open to debate as to whether or not the readings are predominantly 100 or more, in that case the Veterans Court should be very wary of making findings of fact in the first instance. Two points on that. First, there is no finding of fact in the first instance here because the VA examiner clearly said as a factual matter that the pre-medication blood pressure readings are not 100 or more. That's at page 24 of the appendix. So there's already that factual finding. Here's another question. What if, say, Mr. Pelt is a 70-year-old man, and is the VA going to look at blood pressure readings going back 50 years to when he was 20 years old? What if in his medical files there's 50 different blood pressure readings over 50 years? Are they going to look at all 50 of those and say, well, we need to find 26 readings that are at 100 or more in order to classify this person as someone with hypertension? Well, under the Newhouse case, 947F3-1302, there is a presumption that the finders of fact, in this case the VA examiners, do evaluate all the medical evidence before them. But this case is even a step beyond that because all the parties agree. But I think the concern I have is what is the VA's understanding of this predominantly 100 or more rule in the diagnostic code? Does it have to be 50 years of readings? Maybe when Mr. Pelt was in this hypothetical in his 20s or 30s, all of those readings are just irrelevant to the question. And so it's unfairly charging him with healthy readings back when he was a healthy young man in evaluating whether he has hypertension now. Understood, Your Honor. And again, I think that would raise the scenario in Tadlock where this becomes open to debate. And so I think in that context, Your Honor, again, I'm — This is not a fact-finding question. This is an understanding of how do you interpret the code. Like, you know, the history of diastolic pressure, predominantly 100 or more. As a technical matter, the patient that I'm talking about, or the veteran that I'm talking about, has 50 years' worth of blood pressure readings. Are you really going to look at all 50 years of those? Well, when the VA examiner makes a determination on the disability benefits questionnaire that that veteran with 50 years of medical history with blood pressure readings does not present with blood pressure of 100 or more predominantly, that is a finding of fact that I think there's the presumption that that finding of fact does take into account. Is there a time period to look at in applying this regulation for this code? Well, there is retrospectively once the medication is taken. But in terms of premedication, I don't believe there is a time component to this regulation. But there must be some kind of just general standard that the VA has to rely on relevant factual evidence. There very well may be. I'm not familiar standing up here today as to what that might be. Because it's essentially evidence of what his condition is at the relevant time period, right? Right. Whether some kid who entered the Army at 20 had good blood pressure for 30 years is not medically relevant, is it? Until much later. And when you're determining without a time period in the regulation, I assume that the RO and the board and the veterans court are going to require that it have a sound medical analysis and theory. And that may be only relevant in the last five years or the last two years. I mean, obviously, everybody knows that some people develop blood pressure problems later in life. And so you certainly wouldn't discount those higher readings if just because somebody had blood pressure appropriate for their age in their 20s and 30s, would you? No, Your Honor. Let me give you a really stark hypothetical. Sure. You have a veteran who's age 50. From age 48 to 50, every single reading he had, and let's just assume there's like 20 of them, is over 100. Sure. But before that, from age 45 to 20, all of his readings were normal. And there were tons. You don't look at that whole time period and say, well, it's predominantly under 100, so no. You look at the most recent relevant ones and say, he has a pattern of over 100, right? But that's a factual finding that the RO and ultimately the boards are going to make, and it has to be supported by evidence. Right. And I believe that would be evaluated under the clear error standard review by the veterans court, whether that medical finding is supported by the evidence and whether or not they— And, I mean, in that hypothetical where every single reading for the last two years was over 100, the ones before that were under 100, they found it wasn't predominantly over 100. That would probably be clear error, wouldn't it? Well, I'm hesitant to comment, of course— No, the argument never wants to continue. It's just a hypothetical. Sure. I'm not going to hold you against it. Understood, Your Honor. My impression is that would be certainly problematic, and that certainly wouldn't do the purpose of the VA, which is to provide benefits to the— Right, because their whole point is to try to determine if this person actually has high blood pressure, and they do. At that time. That's right, Your Honor. Is there anything in the rule that would prevent the VA from looking back any time a veteran comes in and claims high blood pressure, hypertension? The veteran could come in and say, here are my blood pressure readings for the past two months, and all of them are over 100. And what would prevent the VA from, in every case, defeating that claim by just saying, well, we're going to go back, and when you were in this service 25 years ago, you were fine. So you're not predominantly hypertensive. Perhaps what would prevent them from doing that— There's a temporal boundary here, but my question is, and this goes back to what Judge Shen raised in the first place, is there something in the rule that imposes some temporal bounds on this? So the short answer is I'm not sure if the rule has that temporal limitation. The rule doesn't, but the question is maybe the VA manual does. And again, the same answer, I'm not sure what the VA manual would speak to that or not. Perhaps what would check against that is the fact that these are all reviewed, and appellate review would find that to be a clear error. I mean, cherry-picking is a very clear-cut example of clear error. But I think, and I think Your Honors know where I would go next, which is, in this case, we're looking between 2010 and 2014. So we're not like back-loading readings from 50 years ago in order to support this predominance. We're using this four-slice period of time. And just one last thing. These readings for history of diastolic pressure, those need to be readings without when the person's not taking any medication, right? Yes, Your Honor. Okay. And that's why the window of time we're looking at is 2010 to 2014, because in April 2014, he began taking the medication. Okay. And if there are no further questions, Your Honor, we'd ask that you affirm the decision of the Veterans Court. Okay, thank you. Thank you. Mr. Niles, you have some time. Thank you, Your Honors. As Your Honors' colloquy with my friend show, there is reasonable doubt here in terms of how to, first of all, interpret the regulatory term predominantly, which has legal significance, and then ties to this Court's rulings in Tadlock and Stinson and Slaughter and Deloach. Tadlock is a case that has roots in the Chenery Doctrine, where the agency's decision, right, has to come up with the agency's rationale. And that is, by and large, what is before the court reviewing the agency, the agency decision based on the agency's rationale. And here, when there is a blank space instead of rationale in terms of what does predominantly mean, and then in consideration of that in the 10 pre-medication readings across seven visits, only three of which happened with two or more readings on the same date, was that April 2021 examiner's opinion against a compensative, and it's an opinion, not a finding of fact, by the way. An examiner does not find facts. An examiner fills the role of a medical expert whose opinion has to comport with an accurate factual and legal premise to hold any sway. Is that consistent, then, with the definition of predominantly? Your Honors, we're asking my friend about how far back, if this were in a hypothetical, you know, 50 years of readings. The VA's internal policy manual is called the M21-1, and it does contain a provision that addresses when considering history of diastolic pressure. And the VA's internal policy manual says that VA should only consider blood pressure readings obtained when the veteran was undergoing a diagnostic evaluation for hypertension. And so here, again, you have these 10 readings from seven visits. You have April 29, 2010, with two readings of that day, one of which has diastolic of 100. That's appendix page 27. You have April 26, 2011, with diastolic reading of 100 from a single reading that day. And then book-ending, three other below 100 is in February and April 2014. Two different visits, each with two different readings, with diastolic pressure of at least 100 taken during those visits. And so then that book-ending here, I would submit, further shows the reasonable possibility that on remand, when the board is filling this gap in the first instance, Mr. Pelp has at least a reasonable possibility of a better disposition than the denial that the board issued without addressing those pre-medication readings. Your Honors, once again, Mr. Pelp would respectfully request that this court vacate the Veterans Court's decision in remand. Okay. Thank you, Mr. Miles. The case is submitted.